UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RONALD EVERETT, | ) | 1:10-cv—00741-AWI-SMS-HC |
| | ) | |
| Petitioner, | ) | FINDINGS AND RECOMMENDATIONS RE: |
| | ) | RESPONDENT'S MOTION TO DISMISS |
| | ) | THE PETITION (DOC. 22) |
| v. | ) | |
| | ) | FINDINGS AND RECOMMENDATIONS TO |
| JAMES A. YATES, | ) | DISMISS THE PETITION WITHOUT |
| | ) | LEAVE TO AMEND (DOCS. 22, 1), |
| Respondent. | ) | DISMISS PETITIONER'S REQUEST FOR |
| | ) | AN EVIDENTIARY HEARING, DECLINE |
| | ) | TO ISSUE A CERTIFICATE OF |
| | ) | APPEALABILITY, AND DIRECT THE |
| | | CLERK TO CLOSE THE ACTION |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 and 304. Pending before the Court is Respondent's motion to dismiss the petition, which was filed on March 18, 2011. Petitioner filed opposition on June 3, 2011. No reply was filed.

I. Proceeding by a Motion to Dismiss

Because the petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA applies to the petition. Lindh v.

1

Murphy, 521 U.S. 320, 327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997).

A district court may entertain a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court only on the ground that the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. §§ 2254(a), 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000); Wilson v. Corcoran, 562 U.S. –, -, 131 S.Ct. 13, 16 (2010) (per curiam).

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts (Habeas Rules) allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court...."

The Ninth Circuit has allowed respondents to file motions to dismiss pursuant to Rule 4 instead of answers if the motion to dismiss attacks the pleadings by claiming that the petitioner has failed to exhaust state remedies or has violated the state's procedural rules.  See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate a motion to dismiss a petition for failure to exhaust state remedies); White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 to review a motion to dismiss for state procedural default); Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n.12 (E.D.Cal. 1982) (same). Thus, a respondent may file a motion to dismiss after the Court orders the respondent to respond, and the Court should use Rule 4 standards to review a motion to dismiss filed before a formal answer.  See, Hillery, 533 F. Supp. at 1194 & n.12.

In this case, upon being directed to respond to the petition by way of answer or motion, Respondent filed the motion to dismiss.  The material facts pertinent to the motion are to be found in the pleadings and in copies of the official records of state parole and judicial proceedings which have been provided by the parties, and as to which there is no factual dispute. Because Respondent's motion to dismiss is similar in procedural standing to motions to dismiss on procedural grounds, the Court will review Respondent's motion to dismiss pursuant to its authority under Rule 4.

II.   <u>Background</u>

Petitioner alleges that he was a resident of the Pleasant Valley State Prison (PVSP) located in Coalinga, California, within the Eastern District of California, serving a sentence of seven (7) years to life imposed in the Los Angeles Superior Court on January 17, 1984, upon Petitioner's conviction of kidnaping for the purpose of robbery, robbery with a firearm, credit card fraud, and receiving stolen property in violation of Cal. Pen. Code §§ 209(b), 211, 484(f)(2), 496, and 10222.5.  (Pet. 1-2.) Petitioner challenges the decision of California's Board of Parole Hearings (BPH) made after a hearing held on May 7, 2008, finding Petitioner unsuitable for parole because if released, he would pose an unreasonable risk of danger to society and a threat to public safety.  (<u>Id.</u> at 17.)  Petitioner also challenges the decisions of the state courts upholding the BPH's denial of parole.

Petitioner raises the following claims in the petition:  1) the BPH violated Petitioner's right to due process of law by

relying on erroneous information concerning the facts of the commitment offense; 2) the BPH denied Petitioner's right to due process of law by finding that the commitment offense was callous and cruel in the absence of supportive documentary evidence; 3) Petitioner's right to due process of law was violated when the BPH relied on disciplinary infractions that were from records of a prior prison term and were unrelated to the commitment offense, and failed to conduct a fact-finding process concerning the facts of the disciplinary offenses; 4) Petitioner's right to due process of law was violated by the BPH's consideration of offenses as to which sentences were stayed as part of his plea agreement in connection with the commitment offenses; 5) Petitioner's right to equal protection of the laws was violated by the BPH's consideration of nonviolent offenses that were stayed as part of his plea agreement in connection with the commitment offenses; 6) Petitioner's right to due process of law was violated because there was no evidence in the record supporting the BPH's finding that Petitioner presented a threat to public safety; and 7) the BPH failed to comply with Cal. Pen. Code §§ 3041 and 3041.5, state rules, and state regulations that seek to impose uniform terms for offenses of similar gravity because Petitioner's sentence has become longer than the maximum he would have received if he had lost at trial, and longer than sentences imposed on other inmates whose crimes were also considered callous and cruel. (Pet. 15, 17, 20-21.)

Petitioner further requested an evidentiary hearing in the portion of the petition that appears to be a copy of a previously filed petition for writ of habeas corpus in the California

Supreme Court.  It is not clear whether that request was directed
to this Court, or was only directed to the state court.  (Pet.
14.)

The transcript of the BPH's decision of May 7, 2008, which
was submitted with the petition, reflects that Petitioner was
present when the reasons for the decision were stated.  (Pet. 23-
36.)  It also supports a conclusion that Petitioner had been
present earlier during the hearing because it reflects that "all
parties [had] returned to the room" for the rendering of the
decision.  (Id. at 23.)  Further, in its explanation of the
decision, the BPH referred to Petitioner's testimony, his having
been candid about his involvement with narcotics with the
specific panel of the BPH that presided over the hearing, his
response to a question posed by the BPH concerning his marketable
skills, and his statements made that day, including a closing
statement made to the BPH at the hearing.  (Id. at 25, 31, 33-
34.)  It thus may be inferred that Petitioner attended the
hearing and took the opportunity to testify and address the BPH.
Petitioner also had an opportunity to seek clarification of the
record to include a "GED" in his file.  (Id. at 23-24.)

The BPH found Petitioner unsuitable based on the commitment
offenses, the prosecutor's opposition to release, a psychological
evaluation reflecting an anti-social personality disorder, and
Petitioner's history of escalating criminal conduct, previous
failures on probation and parole, limited programming and self-
help in prison, extensive misconduct in prison, minimization of
his criminal conduct, and lack of preparation for release.  (Pet.
23-35.)

III.  Failure to State a Cognizable Due Process Claim

A.  Legal Standards

The Supreme Court has characterized as reasonable the decision of the Court of Appeals for the Ninth Circuit that California law creates a liberty interest in parole protected by the Fourteenth Amendment Due Process Clause, which in turn requires fair procedures with respect to the liberty interest. Swarthout v. Cooke, 562 U.S. –, 131 S.Ct. 859, 861-62 (2011).

However, the procedures required for a parole determination are the minimal requirements set forth in Greenholtz v. Inmates of Neb. Penal and Correctional Complex, 442 U.S. 1, 12 (1979).[1] Swarthout v. Cooke, 131 S.Ct. 859, 862.  In Swarthout, the Court rejected inmates' claims that they were denied a liberty interest because there was an absence of "some evidence" to support the decision to deny parole.  The Court stated:

> There is no right under the Federal Constitution
> to be conditionally released before the expiration of
> a valid sentence, and the States are under no duty
> to offer parole to their prisoners.  (Citation omitted.)
> When, however, a State creates a liberty interest,
> the Due Process Clause requires fair procedures for its
> vindication–and federal courts will review the

---

[1] In Greenholtz, the Court held that a formal hearing is not required with respect to a decision concerning granting or denying discretionary parole; it is sufficient to permit the inmate to have an opportunity to be heard and to be given a statement of reasons for the decision made. Id. at 16.  The decision maker is not required to state the evidence relied upon in coming to the decision. Id. at 15-16.  The Court reasoned that because there is no constitutional or inherent right of a convicted person to be released conditionally before expiration of a valid sentence, the liberty interest in discretionary parole is only conditional and thus differs from the liberty interest of a parolee. Id. at 9.  Further, the discretionary decision to release one on parole does not involve restrospective factual determinations, as in disciplinary proceedings in prison; instead, it is generally more discretionary and predictive, and thus procedures designed to elicit specific facts are unnecessary. Id. at 13.  In Greenholtz, the Court held that due process was satisfied where the inmate received a statement of reasons for the decision and had an effective opportunity to insure that the records being considered were his records, and to present any special considerations demonstrating why he was an appropriate candidate for parole. Id. at 15.

> application of those constitutionally required procedures.
> In the context of parole, we have held that the procedures
> required are minimal.  In <u>Greenholtz</u>, we found
> that a prisoner subject to a parole statute similar
> to California's received adequate process when he
> was allowed an opportunity to be heard and was provided
> a statement of the reasons why parole was denied.
> (Citation omitted.)

<u>Swarthout</u>, 131 S.Ct. 859, 862.  The Court concluded that the

petitioners had received the process that was due as follows:

> They were allowed to speak at their parole hearings
> and to contest the evidence against them, were afforded
> access to their records in advance, and were notified
> as to the reasons why parole was denied....

> That should have been the beginning and the end of
> the federal habeas courts' inquiry into whether
> [the petitioners] received due process.

<u>Swarthout</u>, 131 S.Ct. at 862.  The Court in <u>Swarthout</u> expressly

noted that California's "some evidence" rule is not a substantive

federal requirement, and correct application of California's

"some evidence" standard is not required by the Federal Due

Process Clause.  <u>Id.</u> at 862-63.

      B.  <u>Analysis</u>

Here, in his first, second, third and sixth claims,

Petitioner essentially contests the BPH's application of the

"some evidence" rule.  In these claims, Petitioner asks this

Court to engage in the very type of analysis foreclosed by

<u>Swarthout</u>.  Petitioner does not state facts that point to a real

possibility of constitutional error or that otherwise would

entitle Petitioner to habeas relief because California's "some

evidence" requirement is not a substantive federal requirement.

Review of the record for "some evidence" to support the denial of

parole is not within the scope of this Court's habeas review

under 28 U.S.C. § 2254.

A petition for habeas corpus should not be dismissed without leave to amend unless it appears that no tenable claim for relief can be pleaded were such leave granted.  Jarvis v. Nelson, 440 F.2d 13, 14 (9th Cir. 1971).

Here, Petitioner did not allege that he was denied an opportunity to be heard or a statement of reasons for the BPH's decision.  However, it is clear from the allegations in the petition that Petitioner attended the parole suitability hearing, made statements to the BPH, and received a statement of reasons for the decisions of the BPH.  Thus, Petitioner's own allegations and the documentation attached to the petition establish that he had an opportunity to be heard and a statement of reasons for the decision in question.  It therefore does not appear that Petitioner could state a tenable due process claim concerning the conduct of the hearing and evidence underlying the findings of the BPH.

Accordingly, it will be recommended that with respect to Petitioner's first, second, third, and sixth claims of due process violations concerning the evidence at the parole hearing, the petition be dismissed without leave to amend.

IV.  State Law Claims

In the seventh claim, Petitioner challenges the BPH's failure to comply with state law that Petitioner alleges limited the appropriate sentence that he should have received.  To the extent that Petitioner's claim or claims rest on state law, they are not cognizable on federal habeas corpus.  Federal habeas relief is not available to retry a state issue that does not rise to the level of a federal constitutional violation.  Wilson v.

8

Corcoran, 562 U.S. — , 131 S.Ct. 13, 16 (2010); <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991).  Alleged errors in the application of state law are not cognizable in federal habeas corpus.  <u>Souch v. Schiavo</u>, 289 F.3d 616, 623 (9th Cir. 2002).

Accordingly, it will be recommended that Petitioner's sixth claim concerning alleged noncompliance with state law be dismissed without leave to amend.

V.   <u>Due Process Violation Based on Consideration of Offenses as to which Sentence Was Stayed</u>

Petitioner alleges that his right to due process of law was violated by the BPH's consideration of offenses as to which sentence was stayed.  Although in the motion to dismiss Respondent seeks dismissal of the entire petition, Respondent has not addressed this claim.  In his opposition, Petitioner appears to contend that he has already completed the sentence on the counts other than the kidnaping, which would include the robberies, and thus the BPH should not have considered the multiple robberies in determining Petitioner's suitability for parole; further, being retained in prison on the basis of those crimes is a violation of the Double Jeopardy Clause.  (Opp. 9.)

Petitioner attached to the petition a transcript of proceedings that occurred in the trial court on December 1, 1983, in which Petitioner changed his previous pleas of not guilty to pleas of guilty to six counts of robbery in violation of Cal. Pen. Code § 211 (counts I, II, III, V, VII, and IX), one count of credit card fraud in violation of Cal. Pen. Code § 484(f)(3) (count IV), and one count of kidnaping for the purpose of robbery in violation of Cal. Pen. Code § 209(b) (count VI).  (Pet. 44-

49.)   A transcript of a sentencing proceeding held on January 17,

1984, reflects that Petitioner was sentenced on the kidnaping

(count VI) to a sentence of life in state prison, and on the

robbery and fraud charges (counts I, II, III, IV, V, VII, and IX)

to an aggregate term of seven (7) years in state prison to run

concurrently with the life sentence.   (Id. at 52-53.)   The

documentation attached to the petition does not indicate that

there was a plea agreement concerning staying counts or

sentences, or that sentence on any of the counts was ordered

stayed.   By virtue of the passage of time, it would appear that

Petitioner has completed the aggregated, seven-year term that was

imposed for the robbery counts.

Insofar as Petitioner may be contending that the BPH's

consideration of the robbery counts in determining parole

suitability was improper, Petitioner is challenging the BPH's

application of the "some evidence" rule.   Thus, such a claim is

foreclosed by Swarthout.

To the extent that Petitioner is contending that the BPH's

consideration was foreclosed by a term of a plea agreement,

Petitioner has not alleged facts entitling him to relief.

A criminal defendant has a due process right to enforce the

terms of his plea agreement.   Promises from the prosecution in a

plea agreement must be fulfilled if they are significant

inducements to enter into a plea.   Santobello v. New York, 404

U.S. 257, 262 (1971); Buckley v. Terhune, 441 F.3d 688, 694 (9th

Cir. 2006).   Plea agreements are contractual in nature and are

measured by contract law standards.   United States v. De la

Fuente, 8 F.3d 1333, 1337 (9th Cir. 1993).   In construing a plea

1  agreement, a court must determine what the defendant reasonably

2  believed to be the terms of the plea agreement at the time of the

3  plea.  United States v. Franco-Lopez, 312 F.3d 984, 989 (9th Cir.

4  2002).

5      The construction of a state court plea agreement is a matter

6  of state law, and federal courts will defer to a state court's

7  reasonable construction of a plea agreement.  Ricketts v.

8  Adamson, 483 U.S. 1, 6 n.3 (1987); Buckley v. Terhune, 441 F.3d

9  688, 695 (9th Cir. 2006).  In California, a negotiated plea

10 agreement is a form of contract and is interpreted according to

11 general contract principles and according to the same rules as

12 other contracts.  Buckley v. Terhune, 441 F.3d 688, 695 (citing

13 People v. Shelton, 37 Cal.4th 759, 767 (2006) and People v.

14 Toscano, 124 Cal.App.4th 340, 344 (2004)).

15     Further, in California, the plain meaning of an agreement's

16 language must first be considered.  If the language is ambiguous,

17 it must be interpreted by ascertaining the objectively reasonable

18 expectations of the promisee at the time the contract was made.

19 Buckley v. Terhune, 441 F.3d 688, 695 (9th Cir. 2006).  If

20 ambiguity remains after a court considers the objective

21 manifestations of the parties' intent, then the language of the

22 contract should be interpreted most strongly against the party

23 who caused the uncertainty to exist, or in favor of the

24 defendant.  Id. at 695-96.

25     Here, the transcript of the change of plea proceeding

26 submitted by Petitioner shows that the plea did not include any

27 conditions concerning parole, minimum sentence, or stay of any

28 sentence that would prevent the BPH from determining suitability

1  for parole on the basis of all of Petitioner's criminal history.

2  Petitioner's general allegations are undercut by the clear record

3  submitted in support of the petition.  See, e.g., James v. Borg,

4  24 F.3d 20, 26 (9th Cir.1994) ("Conclusory allegations which are

5  not supported by a statement of specific facts do not warrant

6  habeas relief.").

7      Accordingly, Petitioner has not stated facts that point to a

8  real possibility of constitutional error.  See, Rules Governing

9  Section 2254 Cases in the United States District Courts, Rule 4,

10  Advisory Committee Notes, 1976 Adoption; O'Bremski v. Maass, 915

11  F.2d 418, 420 (9th Cir. 1990) (quoting Blackledge v. Allison, 431

12  U.S. 63, 75 n.7 (1977)).

13      Further, because the pertinent transcript of the plea

14  proceedings is before the Court, it does not appear that if leave

15  to amend were granted, Petitioner could state a tenable due

16  process claim based on a violation of his plea agreement by the

17  Board's consideration of all offenses on which Petitioner was

18  sentenced.

19      To the extent that Petitioner claims in the opposition that

20  the BPH's determination was a violation of his protection against

21  double jeopardy, the Court notes that the claim is not before the

22  Court because the petition is devoid of any allegations

23  concerning such a claim.

24      Further, it appears that amendment of the petition to

25  include such a claim would be futile.  It is established that the

26  Double Jeopardy Clause of the Fifth Amendment protects against

27  not only a second prosecution for the same offense after

28  acquittal or conviction, but also multiple punishments for the

1   same offense.  U.S. Const. amend V; <u>Witte v. United States</u>, 515

2   U.S. 389, 395-96 (1995).  However, the clause does not require

3   that a "sentence be given a degree of finality that prevents its

4   later increase."  <u>United States v. DiFrancesco</u>, 449 U.S. 117, 137

5   (1980).  An acquittal and a sentence are critically different.

6   <u>Id.</u>  Thus, there is no double jeopardy protection against

7   revocation of probation or parole with imposition of

8   imprisonment.  <u>Id.</u> at 137.  Likewise, the denial of parole is

9   neither punishment nor imposition or increase of a sentence for

10   double jeopardy purposes; rather, it is an administrative

11   decision to withhold early release.  <u>Mahn v. Gunter</u>, 978 F.2d

12   599, 602 n.7 (10th Cir. 1992); <u>Alessi v. Quinlan</u>, 711 F.2d 497,

13   501 (2d Cir. 1983); <u>Roach v. Board of Pardons and Paroles, State</u>

14   <u>of Arkansas</u>, 503 F.2d 1367, 1368 (8th Cir. 1974); <u>United States</u>

15   <u>ex rel. Jacobs v. Barc</u>, 141 F.2d 480, 483 (6th Cir. 1944).

16   Finally, it is established that the Double Jeopardy Clause does

17   not provide the defendant with the right to know at any specific

18   point in time what the precise limit of his punishment will

19   eventually turn out to be.  <u>United States v. DiFrancesco</u>, 499

20   U.S. at 137.

21        Pursuant to California's sentencing scheme, when a prisoner

22   receives an indeterminate sentence, such as fifteen years to

23   life, the indeterminate sentence is in legal effect a sentence

24   for the maximum term, subject only to the power of the parole

25   authority to set a lesser term; parole is an entirely

26   discretionary matter.  <u>Hayward v. Marshall</u>, 603 F.3d 546, 558,

27   561-62 (9th Cir. 2010), <u>overruled on other grounds in</u> .

28   <u>Swarthout v. Cooke</u>, 562 U.S. –, 131 S.Ct. 859 (2011).  Probation

13

1 and parole are parts of the original sentence that must be

2 anticipated by a prisoner.  United States v. Brown, 59 F.3d 102,

3 104-05 (9th Cir. 1995).

4     In summary, the Court concludes that insofar as Petitioner

5 contends that the BPH's determination violated Petitioner's right

6 to due process of law based on inconsistency with Petitioner's

7 plea agreement, the petition should be dismissed without leave to

8 amend.

9     VI.   Equal Protection Claim

10     Insofar as Petitioner claims that his right to equal

11 protection of the laws was violated by the BPH's consideration of

12 offenses that were stayed as part of his plea agreement in

13 connection with the commitment offenses, the preceding analysis

14 shows that Petitioner has not alleged, and could not allege,

15 specific facts showing such a plea agreement.

16     It may be that in alleging that he has served longer time

17 than others whose crimes were considered callous and cruel and

18 even included murder (Pet. 21:7-17), Petitioner is attempting to

19 state a claim that he suffered a denial of equal protection.

20     Prisoners are protected under the Equal Protection Clause of

21 the Fourteenth Amendment from invidious discrimination based on

22 race, religion, or membership in a protected class subject to

23 restrictions and limitations necessitated by legitimate

24 penological interests.  Wolff v. McDonnell, 418 U.S. 539, 556

25 (1974); Bell v. Wolfish, 441 U.S. 520, 545-46 (1979).  The Equal

26 Protection Clause essentially directs that all persons similarly

27 situated should be treated alike.  City of Cleburne, Texas v.

28 Cleburne Living Center, 473 U.S. 432, 439 (1985).  Violations of

equal protection are shown when a respondent intentionally discriminated against a petitioner based on membership in a protected class, <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 686 (9th Cir. 2001), or when a respondent intentionally treated a member of an identifiable class differently from other similarly situated individuals without a rational basis, or a rational relationship to a legitimate state purpose, for the difference in treatment, <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000).

Here, Petitioner has not alleged facts showing that he is a member of a protected class or that membership in a protected class was the basis of any alleged discrimination.  Parole consideration is discretionary and does not provide the basis of a fundamental right.  <u>Mayner v. Callahan</u>, 873 F.2d 1300, 1301-02 (9th Cir. 1989).

Further, Petitioner has not shown that with respect to all pertinent factors of parole suitability, he is similarly situated with others who may have served less time after conviction of murder.

Finally, under California law, a prisoner's suitability for parole is dependent upon the effect of the prisoner's release on the public safety.  Cal. Pen. Code § 3041(b) (mandating release on parole unless the public safety requires a more lengthy period of incarceration).  California's parole system is thus both intended and applied to promote the legitimate state interest of public safety.  <u>See</u>, <u>Webber v. Crabtree</u>, 158 F.3d 460, 461 (9th Cir. 1998) (health and safety are legitimate state interests). Petitioner has not shown or even suggested how the decision in

the present case could have constituted a violation of equal protection of the laws.

The Court concludes that Petitioner has not alleged specific facts showing an equal protection violation.

With respect to the propriety of amending the petition to state such a claim, the Court's statement in Greenholtz concerning the difference between discretionary decisions concerning parole release and those resulting in revocation of parole is instructive:

> A second important difference between discretionary parole release from confinement and termination of parole lies in the nature of the decision that must be made in each case. As we recognized in Morrissey, the parole-revocation determination actually requires two decisions: whether the parolee in fact acted in violation of one or more conditions of parole and whether the parolee should be recommitted either for his or society's benefit. Id., at 479-480, 92 S.Ct. at 2599. "The first step in a revocation decision thus involves a wholly retrospective factual question." Id., at 479, 92 S.Ct. at 2599.
>
> The parole-release decision, however, is more subtle and depends on an amalgam of elements, some of which are factual but many of which are purely subjective appraisals by the Board members based upon their experience with the difficult and sensitive task of evaluating the advisability of parole release. Unlike the revocation decision, there is no set of facts which, if shown, mandate a decision favorable to the individual. The parole determination, like a prisoner-transfer decision, may be made "for a variety of reasons and often involve[s] no more than informed predictions as to what would best serve [correctional purposes] or the safety and welfare of the inmate." Meachum v. Fano, 427 U.S., at 225, 96 S.Ct., at 2538.  The decision turns on a "discretionary assessment of a multiplicity of imponderables, entailing primarily what a man is and what he may become rather than simply what he has done." Kadish, The Advocate and the Expert-Counsel in the Peno-Correctional Process, 45 Minn.L.Rev. 803, 813 (1961).

Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,

442 U.S. 1, 9-10 (1979).  Because parole release determinations are discretionary and are not subject to evaluation based on any particular combination of factors of parole suitability, the fact that Petitioner might posit some similarity with other inmates with respect to offenses, history, or other parole suitability factors would not be sufficient to entitle Petitioner to relief based on the Equal Protection Clause.

Accordingly, it would not appear that Petitioner could state a tenable equal protection claim if he were granted leave to amend.

Accordingly, it will be recommended that Petitioner's claim concerning equal protection be dismissed without leave to amend.

VII.   <u>Decisions of the State Courts</u>

To the extent that Petitioner challenges the decisions of the state courts upholding the BPH's determination (Pet. 14-16, 56-59), because Petitioner has not established a violation by the parole authorities of his rights under the Fourteenth Amendment, the decisions of the state courts upholding the authorities' decision could not have resulted in either 1) a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or 2) a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Petitioner has failed to state facts concerning the state court decisions that would entitle him to relief.  <u>See</u>, 28 U.S.C. § 2254(d).

Therefore, it will be recommended that Petitioner's due process claim with respect to the state court decisions should

1  likewise be dismissed without leave to amend.

2        VIII.  <u>Miscellaneous Allegations or Arguments in the</u>
              <u>Opposition to the Motion concerning the Conviction</u>
3                <u>or Sentence</u>

4      Petitioner raises numerous arguments in the opposition to

5  the motion concerning the involuntariness of his plea and alleged

6  errors concerning the proceedings that led to his conviction for

7  the commitment offenses, such as wrongful denial of a motion for

8  self-representation, ineffective assistance of appellate counsel,

9  and infirmities in his sentence.  These claims are not before the

10  Court because they were not set forth in the petition.

11      To the extent that Petitioner might contend that the

12  petition should be amended to include such claims, the Court

13  notes that the instant petition addresses a decision of the BPH

14  concerning parole, and not the conviction process.  Claims

15  concerning the conviction process would be more appropriately

16  heard in the district in which the conviction was sustained.  28

17  U.S.C. § 2241(d); <u>Laue v. Nelson</u>, 279 F.Supp. 265, 266 (C.D.Cal.

18  1968).  Because Petitioner's convictions were sustained in the

19  Los Angeles County Superior Court, claims concerning his

20  conviction are appropriately considered in the Central District

21  of California.

22      Further, the gravamen of Petitioner's claims in the present

23  petition concerns the BPH's denial of parole.  A claim

24  challenging the Los Angeles County conviction or sentence would

25  concern a different judgment.  Habeas Rule 2(e) provides:

26        A petitioner who seeks relief from judgments of more
      than one state court must file a separate petition
27        covering the judgment or judgments of each court.

28  Petitioner thus cannot properly challenge the judgments of two

different tribunals in a single proceeding. Bianchi v. Blodgett, 925 F.2d 305, 308-11 (9th Cir. 1991). Specifically, it is not permissible to challenge both a denial of parole by the BPH and an underlying conviction in the same habeas corpus action. See, Williams v. Sisto, No. CIV S-07-2692 WBS DAD P, 2009 WL 3300038, *12 (E.D.Cal. Oct. 14, 2009).

Accordingly, the Court concludes that Petitioner's claims concerning his conviction are not properly before the Court, and thus the Court will not address them in this proceeding.

IX.  Certificate of Appealability

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the Court of Appeals from the final order in a habeas proceeding in which the detention complained of arises out of process issued by a state court. 28 U.S.C. § 2253(c)(1)(A); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). A certificate of appealability may issue only if the applicant makes a substantial showing of the denial of a constitutional right. § 2253(c)(2). Under this standard, a petitioner must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. at 336 (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). A certificate should issue if the Petitioner shows that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in any procedural ruling. Slack v. McDaniel,

1   529 U.S. 473, 483-84 (2000).

2      In determining this issue, a court conducts an overview of
3   the claims in the habeas petition, generally assesses their
4   merits, and determines whether the resolution was debatable among
5   jurists of reason or wrong.  Id.  It is necessary for an
6   applicant to show more than an absence of frivolity or the
7   existence of mere good faith; however, it is not necessary for an
8   applicant to show that the appeal will succeed.  Miller-El v.
9   Cockrell, 537 U.S. at 338.

10      A district court must issue or deny a certificate of
11  appealability when it enters a final order adverse to the
12  applicant.  Rule 11(a) of the Rules Governing Section 2254 Cases.

13      Here, it does not appear that reasonable jurists could
14  debate whether the petition should have been resolved in a
15  different manner.  Petitioner has not made a substantial showing
16  of the denial of a constitutional right.

17      Accordingly, it will be recommended that the Court decline
18  to issue a certificate of appealability.

19      X.  Recommendations

20      In summary, the petition should be dismissed without leave
21  to amend.  Petitioner's request for an evidentiary hearing should
22  be dismissed as moot.

23      Accordingly, it is RECOMMENDED that:

24      1) Respondent's motion to dismiss the petition be GRANTED;
25  and

26      2) The petition be DISMISSED without leave to amend; and

27      3) Petitioner's request for an evidentiary hearing be
28  DISMISSED as moot; and

1    4) The Court DECLINE to issue a certificate of

2    appealability; and

3    5) The Clerk be DIRECTED to close the action because an

4    order of dismissal would terminate the proceeding.

5    These findings and recommendations are submitted to the

6    United States District Court Judge assigned to the case, pursuant

7    to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of

8    the Local Rules of Practice for the United States District Court,

9    Eastern District of California.  Within thirty (30) days after

10   being served with a copy, any party may file written objections

11   with the Court and serve a copy on all parties.  Such a document

12   should be captioned "Objections to Magistrate Judge's Findings

13   and Recommendations."  Replies to the objections shall be served

14   and filed within fourteen (14) days (plus three (3) days if

15   served by mail) after service of the objections.  The Court will

16   then review the Magistrate Judge's ruling pursuant to 28 U.S.C. §

17   636 (b)(1)(C).  The parties are advised that failure to file

18   objections within the specified time may waive the right to

19   appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d

20   1153 (9th Cir. 1991).

21   IT IS SO ORDERED.

22   **Dated:    June 24, 2011                        /s/ Sandra M. Snyder**
                                        UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28